IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOHN BARROS,

    Plaintiff,                    No. CIV S-11-0006 DAD P

    vs.

M. MINNICK, et al.,                ORDER

    Defendants.

_____/

        Plaintiff is a state prisoner proceeding pro se. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983 and has filed an application to proceed in forma pauperis under 28 U.S.C. § 1915. This proceeding was referred to the undersigned magistrate judge in accordance with Local Rule 302 and 28 U.S.C. § 636(b)(1).

I. <u>Request to Proceed In Forma Pauperis</u>

        Plaintiff has submitted an in forma pauperis application that makes the showing required by 28 U.S.C. § 1915(a). Accordingly, plaintiff will be granted leave to proceed in forma pauperis.

        Plaintiff is required to pay the statutory filing fee of $350.00 for this action. <u>See</u> 28 U.S.C. § 1914(a) & 1915(b)(1). Plaintiff has been without funds for six months and is currently without funds. Accordingly, the court will not assess an initial partial filing fee. <u>See</u> 28

1 U.S.C. § 1915(b)(1).  Plaintiff will be obligated to make monthly payments of twenty percent of
2 the preceding month's income credited to plaintiff's prison trust account.  These payments will
3 be collected and forwarded by the appropriate agency to the Clerk of the Court each time the
4 amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full.  See 28 U.S.C.
5 § 1915(b)(2).
6 II. Screening Requirement
7      The court is required to screen complaints brought by prisoners seeking relief
8 against a governmental entity or an officer or employee of a governmental entity.  See 28 U.S.C.
9 § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised
10 claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be
11 granted, or that seek monetary relief from a defendant who is immune from such relief.  See 28
12 U.S.C. § 1915A(b)(1) & (2).
13      A claim is legally frivolous when it lacks an arguable basis either in law or in fact.
14 Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28
15 (9th Cir. 1984).  The court may, therefore, dismiss a claim as frivolous where it is based on an
16 indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke,
17 490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully
18 pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th
19 Cir. 1989); Franklin, 745 F.2d at 1227.
20      Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and
21 plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the
22 defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic
23 Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47
24 (1957)).  However, in order to survive dismissal for failure to state a claim a complaint must
25 contain more than "a formulaic recitation of the elements of a cause of action;" it must contain
26 factual allegations sufficient "to raise a right to relief above the speculative level."  Bell Atlantic,

550 U.S. at 555. In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint. See Hospital Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976). The court must also construe the pleading in the light most favorable to the plaintiff and resolve all doubts in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

III. Plaintiff's Complaint

In his complaint plaintiff alleges as follows. He has suffered from "the debilitating disorder dyslexia since he was a child." (Doc. No. 1 at 9.) Since 1980, plaintiff has been a member of the Talking Book Program[1] which allows him to borrow audio books on compact discs (CDs) and to receive them through the mail. (Id. at 11.) In 1994, following his criminal conviction, plaintiff was able to continue to participate in the Talking Book Program while incarcerated at Mule Creek State Prison.[2] (Id.) In 2003, his participation in that program was discontinued. (Id. at 120.) Although it was determined that plaintiff suffered from dyslexia, there was no documentation that his "Dyslexia is organic in nature." (Id.) A person is eligible to participate in the Talking Book Program if he has organic dyslexia. (Id.) In response to plaintiff's administrative appeals, it was ultimately decided by prison officials that although medical documentation was lacking, plaintiff's request to participate in the Talking Books Program would be approved "in the interest of justice." (Id., Attach 1 at 65-68 of 86.)

---

[1] In a March 23, 2010 letter from attorney Thomas Nolan of the law firm of Rosen, Bien & Galvan directed to the ADA Coordinator and the Litigation Coordinator at Mule Creek State Prison, the Talking Books Program is described as a free, mail order program operated by the Library of Congress and the California State Library. (Compl., Ex. 4; Doc. No. 1, Attach. 1 at 28-29 of 86.)

[2] In his March 23, 2010 letter to prison officials, attorney Nolan indicates that Mr. Barros is an Armstrong class member, and "[i]n the past, this office [Rosen, Bien & Galvan] has successfully advocated on behalf of Mr. Barros on several occasions, including once when Mr. Barros was previously incarcerated at MCSP in 1996 and 1997, in order to ensure that he is able to continue to receive his books on tape as an accommodation for his vision impairment and learning disability." (Doc. No. 1, Attach. 1 at 29 of 86.) The letter also expressed disagreement with prison officials finding at the second level of review of plaintiff's administrative appeal that the Talking Books Program was merely for entertainment purposes, with counsel instead arguing that "reading is a major life activity, and the general recreational reading library offered to non-disabled prisoners at MCSP is a program or service of the prison." (Id.)

On November 10, 2009, plaintiff was transferred back to Mule Creek State Prison after being housed at several other state facilities. (Id. at 11-12.) Plaintiff requested that the receiving and releasing department (R&R) allow him to have his tape player, CD player, cassette tapes and CDs because they are "critical to his mental health condition." (Id. at 12-13.) On January 26, 2010, plaintiff received his cassette player but not his tapes, CDs, CD player and catalogue of books. (Id. at 17.) Plaintiff filed inmate 602 grievances and requests for accommodations under the Americans With Disabilities Act. The issues raised therein were ultimately addressed in a director's level administrative decision.

The Director Level decision, dated April 1, 2010 (Log. No. MCSP-09-02150), addressed plaintiff's disability accommodation request to continue to receive audio books through the mail, to have his audio tape player in his cell, and to remain at MCSP and not be transferred. (Id. at 44.) At the second level of review, that inmate appeal was granted only as to plaintiff's request for the audio cassette player. (Id.) At that time plaintiff was informed that he could purchase and possess personal audio books but only ten cassettes and ten CDs at a time. (Id.) He was also informed by prison officials that he could check-out talking books located at the MCSP facility library. (Id.) As for plaintiff's personal property, it was noted that he arrived at MCSP with 15 boxes of property which was in excess of the six cubic feet allowed for each inmate. Plaintiff then met with the R&R sergeant to sort out items he wanted to keep and the remainder of his excess property was sent home. (Id.) At the Director's Level, plaintiff's inmate appeal was denied. (Id.) That decision noted that plaintiff had stated that he was not interested in any of the tapes among his personal property and that plaintiff had been "offered equally effective means of disability accommodation in lieu of his desired accommodations[.]" (Id. at 45.)

In a separate Director Level decision, dated July 22, 2010 (Log No. MCSP-10-00697), plaintiff's request to receive books, magazines, and audio equipment from the Library of Congress through the mail was addressed. (Id. at 52.) At the second level of review, it had been

4

1  noted that in the past a process was implemented to allow plaintiff to receive audio books from

2  outside sources.  (Id.)  However, it was now determined that plaintiff could check out talking

3  books from the MCSP library, as are other inmates.  (Id.)  The second level decision also

4  included the following findings:

> Although the appellant [plaintiff] was not interested in this option, the warden found no necessity for implementing a special procedure to allow uncontrolled access to the requested materials through the mailroom.  He has the same opportunity to check out books from the library as all other inmates, which is in compliance with the Armstrong Remedial Plan (ARP).
>
> Review of the appellant's application for Library of Congress access revealed an institutional safety and security breach, as he failed to select the options of non-receipt of books containing violence or explicit descriptions of sex.  These types of materials are not allowed in the institutional setting for any inmates in accordance with the ARPII.H.1, as the Department has a Legitimate Penological Interest, in preventing the appellant from continuing to receive unscreened material.  The appellant will receive personal property through standard operational procedures as provided in the DOM 54030, and if he desires to receive audio books, he may do so through the MCSP Library system.

15 (Id.)  Plaintiff's inmate appeal of this grievance to the Director's Level was denied.  (Id.)

16              In his complaint before this court plaintiff claims four grounds for relief.  First,

17 plaintiff claims that in violation of his Fourteenth Amendment right to equal protection and the

18 Armstrong Remedial Plan, the California Department of Corrections and Rehabilitation (CDCR)

19 has failed to put the Departmental Operations Manual (DOM) "on audio CD or cassette format

20 for the learning disabled and vision impared [sic]; Prison Officials disposed of legal work placed

21 on CD by Plaintiff[.]"  (Id. at 23.)  Second, plaintiff claims that his right to freedom of religion

22 under the First Amendment was violated when his Holy Bible on cassette was "disposed" by

23 defendants Minnick and Anderson.  (Id.)  Third, in violation of his Fifth and Fourteenth

24 Amendment right to due process, his "ability to file a proper CDC 602 with viable argument"

25 was jeopardized when he did not have a staff assistance to help him "communicate effectively[.]"

26 (Id.)  Fourth, in violation of the Eighth Amendment, plaintiff suffered threats from defendant

1 Minnick to have plaintiff moved or thrown "in a cage[,]" defendant Jackson threatened "to never
2 release Talking Book Program equipment and materials" to plaintiff, "excessive delay on hearing
3 the ADA issue, and severe pain to mind and body throughout this ordeal[.]" (Id.)

IV. Deficiencies with Claims

The court finds that plaintiff's complaint is deficient for the reasons set forth below. Therefore, the court will dismiss the complaint and grant plaintiff leave to file an amended complaint.

    A. Fourteenth Amendment Claim

The court finds that plaintiff has failed to state a cognizable Fourteenth Amendment equal protection claim. Plaintiff's assertions about the Departmental Operations Manual (DOM) being unavailable on a audio format and the destruction of a CD containing his legal work, are not sufficiently alleged. To state a cognizable claim under the Equal Protection Clause, a prisoner "must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent." Byrd v. Maricopa County Sheriff's Dep't, 565 F.3d 1205, 1212 (9th Cir. 2009) (quoting Monteiro v. Tempe Union High School District, 158 F.3d 1022, 1026 (9th Cir. 1998)). This requires allegations demonstrating that the decision-maker selected or affirmed a particular course of action at least in part because of its adverse effects upon an identifiable group. Personnel Adm'r of Massachusetts v. Feeney, 442 U.S. 256, 279 (1979). Therefore, in his amended complaint, plaintiff allege facts that, if established, would demonstrate intentional discrimination by the named defendants on the basis of plaintiff's

/////
/////
/////
/////
/////
/////

disability.  Moreover, plaintiff must allege how he was harmed by the defendants alleged actions.[3]

B.  First Amendment Claim

Plaintiff's only factual allegation in support of his claim that his First Amendment rights have been violated is that defendants Minnick and Anderson "disposed" of a cassette tape Bible recording belonging to plaintiff.  (Doc. No. 1 at 23.)  The First Amendment of the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."  U.S. Const., amend. I.  "Inmates clearly retain protections afforded by the First Amendment . . . including its directive that no law shall prohibit the free exercise of religion."  O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (citations omitted).  However, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system."  Id. (citation and internal quotation marks omitted).  Thus, "[i]n order to establish a free exercise violation, [a prisoner] must show the defendants burdened the practice of his religion, by preventing him from engaging in conduct mandated by his faith, without any justification reasonably related to legitimate penological interests."  Freeman v. Arpaio, 125 F.3d 732, 736 (9th Cir. 1997).  A prisoner must also show that his practice is both "sincerely held" and "rooted in religious belief."  Shakur v. Schriro, 514 F.3d 878, 884 (9th Cir. 2008) (quoting Malik v. Brown, 16 F.3d 330, 333 (9th Cir. 1994)).

The allegations of plaintiff's complaint do not give rise to a First Amendment violation.  Plaintiff has failed to allege facts demonstrating that his practice of religion was

---

[3] Plaintiff is also advised that individuals with disabilities do not fall within a "suspect class" of persons under the Equal Protection Clause.  City of Cleburne, 473 U.S. 432, 442 (1985); see also Serrano v. Francis, 345 F.3d 1071, 1079 n.6 (9th Cir. 2003).  Accordingly, plaintiff's equal protection claim is subject to rational basis review, meaning that there is no constitutional violation so long as "there is a rational basis between the disparity of treatment and some legitimate governmental purpose."  Heller v. Doe, 509 U.S. 312, 320 (1993).  See also Board of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356, 366 (2001)

burdened or in any way deterred by the loss of his audio cassette Bible recording.  See Freeman, 125 F.3d at 737 ("In order to reach the level of a constitutional violation, the interference with one's practice of religion must be more than an inconvenience; the burden must be substantial . . . .") (citation and internal quotation marks omitted).  In addition, there are no facts alleged by plaintiff showing the disposal of his Bible was an intentional act to burden the free exercise of his religion.  See Lewis v. Mitchell, 416 F. Supp 2d 935, 944 (S.D. Cal. 2005) ("Plaintiff must assert more than negligence to state a valid § 1983 claim for the violation of his Free Exercise rights.  Instead, Plaintiff must allege conscious or intentional acts that burden his free exercise of religion.").  Should plaintiff wish to proceed with this claim, he must provide further allegations which address the manner in which the practice of his religion were burdened, the intentional nature of defendants' actions, and the absence of a legitimate penological interest on the defendants' part.

    C.  Due Process Claim

As noted, plaintiff also claims that in violation of the Fifth and Fourteenth Amendments, he was not provided in connection with his inmate appeals with "staff assistance to communicate effectively due to dyslexia[.]" (Doc. No. 1 at 23.)

The due process clause under the Fourteenth Amendment protects prisoners from being deprived of liberty without due process of law.[4]  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought.  "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." Sandin v. Conner, 515 U.S. 472, 483-84 (1995).  Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Id. at 484.  Although prison

---

[4] The Fifth Amendment applies to criminal proceedings and therefore any due process claim brought by plaintiff under that provision is not cognizable here.

8

inmates have a right to file grievances, they do not have a liberty interest in how the grievance is processed and no entitlement to a specific grievance procedure. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003). Therefore, plaintiff's allegation that he was entitled to staff assistance with respect to his inmate appeals fails to state a cognizable claim and should not be included in any amended complaint plaintiff elects to file.

### D. Eighth Amendment Claim

Plaintiff claims that he was subjected to cruel and unusual punishment when defendant Minnick threatened to "throw [him] in a cage," as well as when defendant Jackson threatened "to never release Talking Book Program equipment and materials" to him, and when plaintiff was subjected to "excessive delay on hearing the ADA issue[.]" (Doc. No. No. at 23.)

"Not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny, however." Whitley v. Albers, 475 U.S. 312, 319 (1986). It is "unnecessary and wanton infliction of pain" that constitutes cruel and unusual punishment forbidden by the Eighth Amendment. Id.; see also Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." Whitley, 475 U.S. at 319.

In addition, it is clear under the law of this circuit that an allegation of mere threats alone fails to state a claim of cruel and unusual punishment under the Eighth Amendment. Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987) (upholding district court's dismissal of plaintiff's claim that defendants threatened him with bodily harm to deter plaintiff from pursuing legal redress for grievances). "[I]t trivializes the eighth amendment to believe a threat constitutes a constitutional wrong." Id. Additionally, neither verbal abuse nor the use of profanity violate the Eighth Amendment proscription against cruel and unusual punishment. Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987) (upholding summary judgment because claim that the defendant had used vulgar language; profanity, verbal abuse and verbal harassment did not

state a constitutional claim under 42 U.S.C. § 1983). Therefore, plaintiff's allegation that he was subjected to verbal harassment does not state an Eighth Amendment claim and should not be included in any amended complaint plaintiff elects to file.[5]

V. Defendants

The court notes that plaintiff has named twelve defendants in this action. However, plaintiff's complaint contains no factual allegations regarding several of the named defendants. In the amended complaint, plaintiff must allege in specific terms how each named defendant was involved in the deprivation of plaintiff's rights. There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Vague and conclusory allegations of official participation in civil rights violations are not sufficient. Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between that defendant and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).

VI. Requirements for Amended Complaint

Plaintiff is informed that the court cannot refer to a prior pleading in order to make plaintiff's amended complaint complete. Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. This is because, as a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375

---

[5] Likewise, plaintiff's claim that he suffered cruel and unusual punishment because he experienced delays in the processing of his disability accommodations request, does not rise to the level of an Eighth Amendment violation.

F.2d 55, 57 (9th Cir. 1967).  Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

VII.  Plaintiff's Motions

On January 11, 2011, plaintiff filed a letter addressed to both the Clerk of the Court and to the "Judge" requesting that an order issue to prevent him from being transferred to another prison in retaliation for bringing this civil rights action. (Doc. No. 5 at 1.)  The court construes this letter as a request for a preliminary injunction.  The purpose of a preliminary injunction is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined.  See University of Texas v. Camenisch, 451 U.S. 390, 395 (1981).  A preliminary injunction is available to a plaintiff who is able to establish that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest.  Winter v. Natural Res. Def. Council, 555 U.S. 7, 20 (2008); Stormans v. Selecky, 571 F.3d 960, 978 (9th Cir. 2009).

Here, plaintiff may not seek preliminary injunctive relief until the court finds that his complaint presents cognizable claims.  See Zepeda v. United States Immigration Service, 753 F.2d 719, 727 (9th Cir. 1985) ("A federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; [however] it may not attempt to determine the rights of persons not before the court.").  For the reasons explained above, plaintiff's complaint will be dismissed with leave granted to file an amended complaint.  The court has not authorized service of the complaint upon any of the named defendants.  Accordingly, plaintiff's motion for a preliminary injunction must be denied as premature.

On February 14, 2011, plaintiff filed a motion to add Dr. Stephen Tseng as a defendant in this action.  It appears that defendant Tseng prepared a chrono dated January 14,

2011, noting that plaintiff "would not cooperate during the interview refusing to be re-evaluated and examined. It was determined Mr. Barros was previously granted numerous accommodations that do not fit his clinical picture and have now been removed due to inability to verify his claimed disabilities." (Doc. No. 7 at 31.) Plaintiff's motion to add Dr. Tseng as a defendant in this action will be denied as unnecessary in light of the court's order dismissing the complaint with leave to amend. If plaintiff decides to name Dr. Tseng as a defendant in any amended complaint he elects to file, he is advised to clearly state the nature of his claim against defendant Tseng in that amended complaint and to provide sufficient allegations showing the defendant's involvement in the alleged constitutional violation.[6]

## CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's February 14, 2011 application to proceed in forma pauperis (Doc. No. 8) is granted.

2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. The fee shall be collected and paid in accordance with this court's order to the Director of the California Department of Corrections and Rehabilitation filed concurrently herewith.

3. Plaintiff's complaint is dismissed.

4. Plaintiff is granted thirty days from the date of service of this order to file an amended complaint that complies with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice; the amended complaint must bear the docket number assigned to this case and must be labeled "Amended Complaint"; plaintiff shall use the form complaint provided by the Clerk of the Court; failure to file an amended complaint

/////

---

[6] In addition, plaintiff is cautioned that if he is seeks to raise a new, unrelated claim that was not addressed in his previously filed inmate grievances, such a claim may be subject to dismissal for failure to exhaust administrative remedies prior to filing suit.

1  in accordance with this order will result in a recommendation that this action be dismissed
2  without prejudice.
3          5.  Plaintiff's January 11, 2011 letter, construed as a request for a preliminary
4  injunction (Doc. No. 5), is denied as premature.
5          6.  Plaintiff's February 14, 2011 motion to include another prison official as a
6  defendant (Doc. No. 7) is denied as unnecessary.
7          7.  The Clerk of the Court is directed to provide plaintiff with the court's form
8  complaint for a section 1983 action.
9  DATED: September 13, 2011.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:4
barr0006.14